DRUCKER *v.* ROBERTSON, Collector of Customs.

(*Circuit Court, S. D. New York.* December 17, 1888.)

1. CUSTOMS DUTIES—EYELET HOOKS.

Eyelet hooks or lacing studs for shoes are dutiable under the clauses for manufactures of metals in Schedule E, § 2504, Rev. St. U. S., and Schedule C, act March 3, 1883, at 35 per cent. and 45 per cent., respectively.

2. SAME—ELASTIC GORING FOR SHOES.

Elastic goring for shoes composed of silk, cotton, and India rubber is dutiable at 30 per cent. *ad valorem* as an India-rubber fabric, under Schedule N, act March 3, 1883.

3. SAME.

Elastic goring for shoes, composed of worsted, cotton, and India rubber, is dutiable at 30 cents per pound, and 50 per cent. *ad valorem*, under Schedule K, and like goring, made of cotton and rubber, at 35 per cent. *ad valorem*, under Schedule I, of the act of March 3, 1883.

At Law. Action to recover back custom duties.

The plaintiff brought this action to recover back duties alleged to have been exacted in excess of the lawful rate on certain importations made by him in 1883 and 1884. The importations consisted of two classes of goods,—the eyelets with hooks on them, such as are often worn in the uppers of men's shoes, and the elastic goring which is put into the uppers of Congress gaiters. The eyelet hooks were imported, some before, and some after, the taking effect of the act of March 3, 1883, and were classified for duty by the collector at 35 per cent. and 45 per cent. *ad valorem*, respectively, under the "manufacture of metals" classes of the two acts, Schedule E, § 2504, Rev. St. U. S., and Schedule C, act March 3, 1883. The plaintiffs claimed that those imported prior to July 1, 1883, were properly dutiable at 6 cents per 1,000 as "eyelets of every description," or at 30 per cent. *ad valorem* as "buttons," under Schedule M, § 2504, Rev. St. U. S., and that those imported after July 1, 1883, were properly dutiable at 35 per cent. *ad valorem* as "plated or gilt articles," under Schedule C, act March 3, 1883, or at 25 per cent. *ad valorem* as "buttons," under Schedule N of the same act. As to this issue, the testimony was unconflicting that the goods were never known in trade and commerce in this country as "eyelets" or "buttons," but always as "eyelet hooks" or "lacing studs." The gorings in the case were all imported after July 1, 1883, and were of three kinds,—the first composed of silk, cotton, and rubber; the second, of worsted, cotton, and rubber; the third, of cotton and rubber. The first kind was classified for duty at 35 per cent. *ad valorem* under the clause in Schedule N, act March 3,

1883, imposing that rate of duty upon "webbing composed of cotton, flax, or any other materials;" the second kind at 30 cents per pound, and 50 per cent. *ad valorem,* under the clause in Schedule K, act March 3, 1883, imposing that rate of duty upon "webbings, gorings, suspenders, braces, * * * of which worsted is a component material;" and the third kind at 35 per cent. *ad valorem,* under the clause in Schedule I of the same act, imposing that rate upon "cotton * * * webbing, goring, suspenders, braces." The plaintiff claimed that they were all properly dutiable at 30 per cent. *ad valorem* as "India-rubber fabrics, composed wholly or in part of India rubber," under Schedule N, act March 3, 1883.

*Stephen G. Clarke,* for plaintiff.

*Stephen A. Walker,* U. S. Atty., and *Macgrane Coxe,* Asst. U. S. Atty., for defendant.

LACOMBE, J., (*charging jury, after stating the facts as above.*) I should only confuse you if I reviewed the various provisions of the tariff act under which the law governing this case is crystalized. As to the eyelet hooks you need not concern yourselves; your verdict as to them must be in favor of the defendant. Nor need you concern yourselves as to so much of the elastic fabrics as are composed of silk, or known as silk and cotton, because as to those your verdict must be in favor of the plaintiff.

That leaves only two of these varieties of elastic fabric for your consideration. The plaintiff contends that they are dutiable under the 453d paragraph of the act of 1883, which provides for a duty on India-rubber fabrics, composed wholly or in part of India rubber. Undoubtedly these are India-rubber fabrics, composed in part of India rubber, and as such would be dutiable under that paragraph, unless by some special enumeration they are otherwise provided for in the tariff act. The defendant— the government—contends that they are elsewhere specially enumerated; and defendant's counsel refers to the word "gorings," which is twice used elsewhere in the tariff act—once, in the wool schedule, and again in the cotton schedule—as referring to these goods. Now, without construing the language of those paragraphs where the word "goring" is used, I shall probably put the question to you most simply, and in the way you can best dispose of it, by stating it thus: In order to sustain his contention that the use of the word "gorings" in the cotton and in the wool schedules operates to take these particular articles out of their classification as India-rubber fabric, the defendant must satisfy you, by a fair preponderance of proof, that at the time when congress, in this act of 1883, first used the word "gorings" in a tariff act, that word had in the trade and commerce of this country a well-known trade meaning; and further that that well-known trade meaning was such that it would cover goods like these, and, moreover, was such that it would not, and did not cover gorings which were non-elastic. Unless he satisfies you on the affirmative of those various propositions, he has not made out such a case as will entitle him to claim that these articles are to be found in the wool and cotton schedules. To recapitulate: He must satisfy you that in the trade and commerce of this country, on March 3, 1883, the

word "goring" had a well-defined meaning, and that that well-defined meaning covered only elastic fabrics such as these; because, if it also covered non-elastic fabric, then the provision for "gorings" in the wool and cotton schedules is met by the production of articles other than these, and it is not necessary to draw out any articles from the elastic schedule to be covered by that word. The language of trade and commerce you will understand, of course, is not the mere shop purchasing language of the consumer who buys over a retail counter, but it is the language in use by the large dealers of the country who conduct the trade of the country, so called.

The jury rendered a verdict for the defendant on the question left to them.